UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 22-mj-239-2 |
| | : | |
| JACOB MICHAEL THERRES, | : | |
| | : | |
| Defendant. | : | |

## MOTION FOR DETENTION PENDING TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Jacob Michael Therres, be detained pending trial, pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence] and 18 U.S.C. § 3142(f)(2)(A) [Risk of Flight].

I. **BACKGROUND**

A. **Procedural Posture**

On November 14, 2022, the defendant, Jacob Michael Therres, was arrested in the District of Maryland on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Moxila A. Upadhyaya in connection with a Criminal Complaint charging the defendant with Assaulting, Resisting, or Impeding Certain Officers as a Felony, in violation of 18 U.S.C. §§ 111(a) and (b), Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2), Engaging in Acts of Physical Violence in any Restricted Buildings or Grounds, in

violation of 18 U.S.C. § 1752(a)(4), Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D), and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

The defendant was on the front lines of a violent riot. He was obstructive and assaultive in his actions at the U.S. Capitol on January 6, 2021, throwing a large wooden plank at a defensive line of police officers, injuring one, and spraying chemical irritants at officers while on the lower West terrace. At the time of this conduct, the defendant was on probation and awaiting trial on felony charges in Harford County, Maryland. He has since been convicted of a felony offense and is currently on probation. Prior to his felony convictions, the defendant had been convicted in 2017 of second-degree assault and had violated orders of protection.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

    **B.**    **Factual Background**

        *i.*    *Background on January 6, 2021*

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election,

which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At approximately 1:00 p.m., a crowd of violent rioters assembled on the West Front of the U.S. Capitol. U.S. Capitol Police formed a line of bike racks extending from the north end of the West Front to the south end to act as a barrier against the crowd. Officers were standing watch behind this line and fending off repeated attempts by the rioters to pull on the bike racks, either with their hands or with ropes and straps.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session

of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there. Photographs and videos of several of these persons were disseminated via social media and other open-source online platforms.

    ii.  *The defendant's presence on January 6, 2021.*

Multiple open-source videos and images show the defendant was present on U.S. Capitol grounds from approximately 1:30 p.m. until after 3 p.m., which was the timeframe when violence erupted on the Lower and Upper West Plaza and Terrace. The below images show the defendant in those areas and the clothing he was wearing that day: a blue Trump hat, a red sweatshirt with a backpack, light-colored pants, tennis shoes, and sometimes wearing a white mask:









The statement of facts attached to the criminal complaint in this case (pages 6-7) provide the following regarding the identification of the defendant: On February 2, 2021, the FBI posted a "be on the lookout" (BOLO) for an unknown subject (unsub) #180 - Assault on a Federal Officer (AFO). Thereafter, the FBI received numerous online tips identifying the defendant as AFO-180. On November 5, 2021, the defendant was on probation in the state of Maryland for a felony theft conviction. On that date, the FBI showed still frame photos of the person depicted in AFO-180 committing acts of violence at the United States Capitol to the defendant's Probation Officers, who positively identified the individual in the photo as the defendant.

    *iii.*    *The defendant's violent assaults on January 6, 2021.*

Open-source videos and images from January 6, 2021 depict the defendant engaging in violent conduct from approximately 2:10-2:35 p.m. on the Lower and Upper West Terrace. A video entitled "WASHINGTON DC INCIDENT (LOTS OF RAW FOOTAGE)"[1] captures several of the defendant's violent assaults on law enforcement officers:

---

[1] https://www.youtube.com/watch?v=qSv4oifsb-g&t=649    (No longer available); https://archive.org/details/2S69NcvXrFEfnuJCC

Timecode: 10:48 – Defendant throwing unknown object at officers and object appears to strike officers



Timecode: 11:08 – Defendant throws second unknown object at officers



Timecode: 11:24 – Defendant throws long wooden plank thrown at officers, striking one in the head





Timecode: 17:55 – Defendant's theft and use of chemical sprayer from equipment bag on West Plaza stage





**Alternative view of spray assault[2]**



JANUARY 6 WASHINGTON, D.C. RIOT, FULL
https://www.youtube.com/watch?v=AQAY5hUNhWs&t=1468
Timecode: 24:28

**Alternative view of wood plank assault**



---

[2] *See also*
https://web.archive.org/web/submit?url=https://video.parler.com/xM/8C/xM8CXfu9pQHk.mp4
Timecode: 0:58
https://archive.org/details/DZ7CnoNLN7cLMXPJr
Timecode: 36:25



Bodycam footage from Thomas Robertson case
https://archive.org/details/DZ7CnoNLN7cLMXPJr
Timecode: 18:40





ZUMA Press Trump Supporters Storm US Capitol - John Harrington 10min22sec.mp4
https://vimeo.com/500625255
Timecode: 7:38

**Pointing and laughing when officers fall to the ground after being struck by metal chair.**



ZUMA Press Trump Supporters Storm US Capitol - John Harrington 10min22sec.mp4
https://vimeo.com/500625255
Timecode: 9:52

II.    **ARGUMENT**

    A.    **Applicable statutory authority**

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, "Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). Thus, a detention hearing must be held at the government's request only "in a case that involves" a charged offense falling in one of five enumerated categories, 18 U.S.C. § 3142(f)(1)(A)–(E), or if the defendant poses a serious risk of flight or of attempting to obstruct justice or threaten, injure, or intimidate a witness or juror, *id*. § 3142(f)(2)(A)–(B). The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *Salerno*, 481 U.S. at 755.

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves … (A) a crime of violence…for which a maximum term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another or (B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used

in the course of committing the offense." Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a) and (b) is such an offense. This case also involves "a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A).

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community – an inquiry that considers (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger posed by his release.

The United States seeks detention because no combination of conditions will assure the defendant's appearance as required or that the defendant will not pose a danger to the safety of the community.

    **B.  The factors under 18 U.S.C. § 3142(g) weigh in favor of detention.**

The government proffers the information contained below in support of establishing the requisite clear and convincing evidence requiring the defendant's detention.

    *i.  The Nature and Circumstances of the Offense*

The defendant's crimes are serious and cannot be viewed in isolation—he was one of thousands of individuals who descended upon the Capitol on January 6 to obstruct a cornerstone process of our democracy. The defendant was on the front lines of a violent mob pushing up against a police line on the West Plaza. When he witnessed the violence taking place shortly after 2 p.m., he did not retreat. Instead, he joined in the violence and committed several assaults of law enforcement officers. He began throwing objects at a line of law enforcement officers. At one point, he picked up a large wooden plank and tossed it toward the line of officers. The wood plank struck an officer in the head resulting in immediate and lingering medical effects

from the blow.

The Chief Judge has outlined specific offense characteristics that serve as guideposts relevant to assessing the comparative culpability of each defendant in relation to the other rioters. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 26–27 (D.D.C. 2021). Those considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses," (2) "engaged in prior planning before arriving at the Capitol," (3) carried or used a dangerous weapon during the riot, (4) "coordinat[ed] with other participants before, during, or after the riot," or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct," and (6) the nature of the "defendant's words and movements during the riot," including whether he "threatened or confronted federal officials or law enforcement." *Id*.

Almost all of the *Chrestman* factors put the defendant in a more serious category and demonstrate his dangerousness. *Id*. at 26. First, he has been charged with felony crimes of violence involving deadly or dangerous weapons. Second, his conduct demonstrates a dangerous hostility to law enforcement. The Court noted in *Chrestman*, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement…". *Id.* Video shows the defendant engaging in multiple violent confrontations with law enforcement, and the defendant laughing and pointing after an officer fell to the ground after being struck with a metal chair. Next, the defendant stayed near the front line, opportunistically attacking police and pulling away what little protection the officers had from the rioters.  In doing so he took a de facto leadership role in the attack by the violent mob. Next, while there is currently a lack of evidence concerning coordination with others before January 6, it is apparent that Therres coordinated with his co-defendant Wyatt during the riot. Video shows that Wyatt

handed Therres a heavy wooden plank, and Therres then tossed the plank at a line of officers. Both Therres and Wyatt proceeded to the stage area of the West Plaza where they both are seen on video using pepper spray against officers.

Other individuals charged for battering police have been ordered detained. *See United States v. Padilla,* 21-cr-214; *United States v. Neefe,* 21-cr-567-1; *United States v. Lazar*, 21-cr-00525-ABJ; *United States v. Boughner*, 22-cr-20; *United States v. Krol*, 22-cr-110; *United States v. Ramey*, 22-cr-184. The nature and circumstances of his offenses therefore weigh in favor of detention.

      *ii.*    *The Weight of the Evidence Against the Defendant*

The weight of the evidence against the defendant is strong, and weighs in favor of detention. The defendant is captured on multiple videos repeatedly engaging in conduct to assault officers. First, he twice threw unknown objects at a line of officers. Second, he threw a large wooden plank at the same line of officers, striking an officer in the head and injuring him. Third, he moved to the West Plaza stage area, removed cannisters of chemical spray from an equipment bag, and sprayed the chemical spray toward a line of officers. Collectively, there is significant evidence of guilt and a conviction is likely.

      *iii.*    *The History and Characteristics of the Defendant*

Perhaps the most significant factor weighing in favor of detention is the defendant's criminal history, which is all relatively recent and includes a felony conviction among convictions for other offenses, as follows:

| Arrest Date | Charge | Disposition Date | Disposition |
|---|---|---|---|
| 9/14/2017 | Assault – 2d degree | 10/18/2017 | 1 Year Confinement/1 Year Confinement Suspended/1 Year Supervised Probation |

16

| 4/2/2018 | Violate protective order | 11/17/2021 | 60 Days Confinement/45 Days Suspended |
|---|---|---|---|
| 6/20/2018 | 1) Violate protective order; 2) Violate protective order; 3) Witness Retaliation; 4) Induce/Inhibit testimony | 6/20/2018 | Guilty: 2) Violate protective order: 2 months, 29 days confinement/1 month, 29 days suspended |
| 9/15/2020 | 1) Burglary-First Degree (felony); 2) Burglary-Third Degree (felony); 3) Burglary-Fourth Degree (misd); 4) Theft: $1,500-$25,000 (felony); 5) Malicious Destruction of Property (misd) | 4/7/2021 | Guilty: 4) Theft-$1,500-$25,000 (felony): 5 Years Confinement/5 Years Suspended/3 Years Probation/ $4000 Restitution |

The defendant's criminal history[3] shows an alarming contempt for authority and the rule of law, including the use of violence. The defendant cannot be expected to comply with conditions of release given his criminal history and history of noncompliance with court orders. When the defendant's actions on January 6 are juxtaposed with his violent criminal history and apparent disdain for authority, it is clear this factor weighs heavily in favor of detention.

        *iv.*      *The Nature and Seriousness of the Danger to any Person or the Community*

The defendant's actions at the Capitol alone make him a serious risk of danger to the community. The D.C. Circuit has drawn a distinction between violent and non-violent participants in the Capitol riots, with the former being in a "different category of dangerousness." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir.), judgment entered, 844 F. App'x 373 (D.C. Cir. 2021) (emphasis added). In fact, the court in *Munchel* specifically named those who assaulted police officers as falling into the category of elevated dangerousness. *Id; see also United States v. Hale-*

---

[3] The criminal history summarized in the table in this memo is a summary from a NCIC report received from the FBI and information provided by U.S. Probation.

*Cusanelli,* 2021 WL 2816245, at *6 (D.D.C. July 7, 2021).  (affirming detention order where District Court found Capitol riot defendant's "'conduct in this case made me concerned that he was perhaps looking to act on these violent tendencies and violent comments in the past'"). Other courts in this district have made the same observation. "Indeed, if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *United States v. Fairlamb*, No. 1:21-CR-120-RCL, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021). These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community.  Given the defendant's violent criminal history, disdain for authority and repeated use of force against law enforcement in instances both on and outside of January 6, the defendant's risk of danger is without question.  Accordingly, the defendant's release poses a danger to the community and this factor weighs in favor of detention.

      **C.**      **The Court's inquiry regarding requests for detention in Capitol Riot cases**

On November 15, 2022, the Court asked the government to provide an explanation as to why it seeks detention in some cases involving crimes of violence and not others. The government makes decisions about requests for pre-trial detention on a case-by-case basis after careful and judicious consideration of the facts and circumstances surrounding each defendant in relation to the factors set forth in 18 U.S.C. § 3142.

The facts and circumstances surrounding the two defendants in this case are a good example of differing detention decisions despite the defendants' similar conduct. Specifically, both defendants were involved in violent altercations with law enforcement around the same time of day and in the same part of the Capitol grounds; the only meaningful difference in their

behavior and its consequences is that Therres directly injured an officer by tossing a large wooden plank at a police line. Yet while their behavior on January 6 was quite similar, Therres' criminal history and inability to comply with court orders is distinctly different from Wyatt and supports a request for detention.

      Put simply, Therres' track record in the criminal justice system indicates that there is no combination of conditions that will assure Therres' appearance as required or that Therres will not pose a danger to the safety of the community. Therres committed his crimes of violence on January 6 while on probation for a prior offense and awaiting trial on multiple felony charges in Harford County, Maryland. Therres was later found guilty of one of those felonies and is currently on probation for that offense. Prior to the felony charges, Therres was convicted in 2017 of a second-degree assault. In June of 2018, Therres was charged with two violations of a protective order, witness retaliation, and witness tampering and found guilty of a violation of violating a protective order. In significant contrast, Wyatt's criminal history consists of one conviction for disorderly conduct over thirty years ago.

      The government also considers other factors when deciding to request pretrial detention, such as cooperation with law enforcement during their arrest. A defendant's demeanor and conduct during law enforcement interactions can be an indicator as to whether a defendant will comply with court orders and conditions of release. Here, Therres refused to answer routine questions asked by officers, whereas Wyatt generally complied with law enforcement requests on the day of his arrest. Additionally, during the search of Therres' residence, law enforcement discovered evidence indicating that Therres may be involved in drug distribution, including a secret compartment in the residence containing what appears to be a controlled substance, large quantities of cash, and a replica firearm. Therres' behavior while on probation for a felony

conviction is one more indicator of his inability to comply with any pretrial conditions and supports his pretrial detention.

### III. CONCLUSION

For the reasons explained here, the United States respectfully requests the Court grant the government's motion to detain the defendant pending trial. There is clear and convincing evidence that the defendant poses a danger to the community if released, and that there is no condition or combination of conditions that would ensure the safety of the community if released. Finally, given his history of failure to comply with court orders, there is also clear and convincing evidence that Therres is a flight risk and would not appear at trial as required.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: /s/ Andrew J. Tessman
ANDREW J. TESSMAN
Assistant United States Attorney
District of Columbia – Detailee
WV Bar No. 13734
300 Virginia Street
Charleston, WV 25301
(304) 345-2200
Andrew.Tessman@usdoj.gov