UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 22-cr-381 (JEB) |
| | ) | |
| Jacob Therres, *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on April 24, 2023 at 11 o'clock a.m. when he appears in person before the Court for his sentencing hearing.

1. The defendant was arrested on November 14, 2022, on a criminal complaint issued by this Court in 22-mj-239-02 (MAU), in which he was charged with his codefendant, stepfather Douglas Wyatt, for criminal conduct more than a year and a half before on January 6, 2021.  He made his first appearance before Mag. Judge G. Michael Harvey the next day.  At the initial appearance, the government requested pretrial detention for the defendant.  He was held for one week, until his release following a lengthy pretrial detention hearing.  He was released to the High-Intensity Supervision Program, with 3rd party custody provided by Katilyn Payne, the defendant's fiancée.[1] That day, Nov. 22, 2022, the defendant was arraigned on an indictment in the instant case and entered a plea of not guilty.  The indictment alleged seven criminal offenses, including Civil Disorder; Assault on Officers using a Dangerous Weapon, Inflicting Bodily Injury; a second count of Assault with a Dangerous Weapon (chemical spray); Entering and Remaining on Capitol Grounds or Buildings with a dangerous weapon; Disorderly and

---

[1] The defendant has complied with the conditions of his release to HISP. During this time, he has been able to operate his business within the curfew requirements set by his release order.

Disruptive Conduct; Engaging in Physical Violence with a Dangerous Weapon; and commission of an Act of Violence in a Restricted Building. (*See* Presentence Report ("PSI"), page 3, ¶1 for a complete list of the offenses along with citations to the U.S. Code.)  The indictment named the defendant singly, not including codefendant Wyatt from the magistrate's case.

2. From the time the defendant was arrested and provided counsel, he was determined to take responsibility for his conduct.  Within two months of his release, he returned to appear before this Court to enter a plea of guilty to the offense of Assaulting/Resisting/Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §111(a) and (b)(1).  He has understood the seriousness of his behavior, the importance of taking responsibility for it, and the need for him to be punished.[2]

3. The defendant faces a maximum sentence of twenty (20) years incarceration, a fine of up to $250.000, or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. §3571(b)(3) and (d);  a term of supervised release of no more than three (3) years, pursuant to 18 U.S.C. §3572 and §5E1.2 of the U.S. Sentencing Guidelines ("USSG"). (PSI, page 17, ¶¶73 through 84) The defendant must also pay a $100 special assessment.  The defendant has consented to restitution of $2,000 to help defray the costs of repairing the damage to the Capitol. (ECF Doc. 29, Plea Agreement, page 8, §12)

3.. Defendant and his counsel reviewed the Draft PSI (ECF Doc. 31) and found no material errors or omissions, and hence lodged no objections to it.  The final PSI conforms to their review. (ECF Doc. 33)

---

[2] By contrast, the defendant's stepfather, Mr. Wyatt, remains in pre-indictment status in the aforementioned magistrate's case.

4. The defendant does not dispute the recitation of his criminal arrests and convictions in the PSI (Part B, "Defendant's Criminal History," ¶¶41-50)[3] Nor does he dispute the calculation of the U.S. sentencing guidelines, with a Total Offense level of 26, criminal history category III, based on (5) criminal history points. (PSI, ¶45-47)  Three of the five points are for three separate convictions for which the defendant received sentences below sixty (60) days; the remaining two points are assessed because the defendant committed the current offense while under a criminal justice sentence in Harford Co., MD. (PSI, ¶46)  The guideline range for the offense is therefore 78-97 months. (PSI, ¶¶73-74) )  It is the defendant's contention that the criminal history category III overstates his actual previous criminal conduct; forty percent of his points derive from having committed this offense while under supervision, not for previous convictions.

5. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

---

[3] The defendant believes that a traffic violation, Use of Motor Vehicle Horn When Not Reasonably Necessary, had been expunged, though as reported as an 'excluded conviction" it does not affect the calculation of his criminal history.

6.  The government's recommended sentence of 84 months is slightly below the middle (87-½ months) of the 78-97 month sentencing range, while the U.S. Probation Office recommendation of 92 months is very near the top.   The defendant seeks a sentence that varies significantly from the low end of the guidelines for reasons that he will identify below.

7.  The defendant's sentencing will bring to an end a very sad and unnecessary chapter in his life.  Though the defendant has had problems and has a criminal record – albeit with nothing approaching the seriousness of the instant offense – he has also made great progress in the past few years.  First, he has a loving relationship with a young woman, Ms. Payne, to whom he is engaged and with whom – only in the past month – he has his first child.  His fiancée appears to be a stabilizing influence on the defendant; she herself is employed and impressed Mag. Judge Harvey enough that he made her the defendant's 3rd party custodian.  And the defendant has built a business in construction and home improvement that employs others and could one day make him very prosperous.

8. At the same time, the defendant recognizes that he needs to be able to control his anger.  His having failed to do so on numerous occasions has plagued him – and hurt others – and led to impulsive, even dangerous conduct. That was on display here.  He has expressed to counsel that, no matter the outcome at sentencing, he sees the need for help in managing anger.

9.  The defendant has taken responsibility unconditionally.  The government chose to debrief the defendant earlier this month, subjecting him to questioning about his conduct on January 6.  He made no excuses for his behavior, nor did he try to deflect blame on others. He made no effort to try to explain away why he acted as he did.  The defendant met his stepfather on the grounds of the Capitol on January 6; his stepfather felt very strongly about the results of

the election and was there to protest. And though it was his stepfather who fatefully picked up

the piece of lumber, and gave it to him, the defendant blames only himself for the action he took.

He feels a terrible sense of shame, and is bewildered by his terrible behavior – unplanned and

unexpected when he left his home the morning of January 6.

      10.   The Court must always avoid unwarranted disparities at sentencing and the

government has cited two cases for comparison.  The defendant adverts the Court to *United

States v. Michael Dickinson,* 21-cr-649 (JDB), for its similarity to the instant case.[4]  The

defendant, thirty years-old and with no criminal record when he came to Washington on January

6, joined a group of protestors near steps on the west side of the Capitol.  The defendant believed

that police officers on the steps were acting too roughly keeping in line two women who were

protesting nearby.  He threw an empty coffee mug at them, as a rebuke or to get them to stop, or

both, and it struck one of the officers.  The officers were in riot gear, so it did not seem to the

defendant that the mug could hurt them and it didn't.  He then moved to another area on the

grounds and got involved in a standoff between officers guarding the Capitol and protesters

opposing them.  The defendant threw a pail of liquid – its nature was never identified – at the

officers.[5]  The second assaultive act was a counterpart to the defendant here picking up the

chemical spray and using it after he had thrown the piece of lumber at the officers.

---

[4] Counsel represented the defendant in the Dickinson case.

[5]  In response, an officer fired a rubber bullet that struck the defendant's face, breaking his jaw and shattering several teeth. Judge Bates took into account the injury the defendant suffered when imposing a sentence below the low end of the guidelines; it was clear that the defendant had paid a very high price already for his criminal conduct.

11. The defendant in *Dickinson* did not use a dangerous weapon and his guideline range – 24-30 months – was therefore much, much less than the one the defendant faces here.[6]  But the conduct of the defendant and Mr. Dickinson was alike, in that (1) they acted impulsively; (2) their conduct involved no advance planning; (3) did not appreciate the seriousness of the situation or of their conduct, and (4) neither thought that he could harm officers (in the instant case, a helmeted officer) with his action, but to their discredit did not take into account the effect their actions could have in encouraging others in the mob.

12.  What is striking is how seriously the sentencing guidelines and statutory penalties are in cases involving attacks on police officers.  So far, we have only discussed the avoidance of unwarranted sentencing disparities in similar cases.  Yet, to venture afield,  the guideline sentence recommended for the defendant's conduct here is as much or more than that seen in drug trafficking cases, where the conduct consists of repeated, methodical criminal conduct.  Here a violent, impulsive act has produced a consequence that the defendant could not imagine.

13. The defendant asks the Court to impose a sentence that will provide punishment, but also for a community service component that would reduce the period of incarceration.  In most cases, community service consists of an assignment to help a charity or social service organization.  It might be a food bank or a recreational center for youth or the elderly.  In this case, the defendant has a valuable skill that could be put to use in helping provide construction and renovation services to those in need.  Habitat for Humanity came to mind when counsel first discussed this with the defendant  – this was after he entered his guilty plea and before he left the

---

[6] Senior Judge John D. Bates varied from the guidelines, imposing a sentencing of twenty (20 months), taking into account the defendant's lack of a criminal record, the injury he suffered, and family support.  He denied the U.S. Probation Office's imputation of a 4-level increase for a dangerous weapon, finding that it did not meet the criteria set forth in the sentencing guidelines. The facts showed that the officer was struck but suffered no injury, and the coffee mug itself was not recovered for examination.

courthouse – as it occurred to counsel that the defendant could repay a large part of his debt to

society by providing contracting services without charge to a group that helps the needy.  The

defendant advises that he has contacted his local church and also Habitat for Humanity in this

regard.  Reducing the amount of time spent incarcerated would mean the defendant would not

miss out completely the formative years of his new son.  The defendant offers to provide as

many as 1,000 hours of community service, which would represent a sizable contribution worth

many thousands of dollars to those whom he helps.[7]

14.  Rather than recommending a specific number of months, the defendant defers to the

Court on the sentence it chooses to impose.  The defendant is confident that the Court's sentence

will reflect the proper ratio of punishment and lenity.

15. The defendant requests that he be permitted to self-surrender at not before July 1,

2023, as Ms. Payne will be on maternity leave roughly till then, after which the couple's child

will be in daycare.   This period will allow the defendant to help out as needed before Ms. Payne

must return to work..

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

---

[7] The defendant will supplement this filing with photographs of projects he and his company have completed, along with letters of reference from several persons close to him who can vouch for his good qualities.

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Andrew J. Tessman, Esq., DOJ-USAO District of Columbia - Detailee, 300 Virginia Street East, Suite 4000, Charleston, WV 25301, this 21st day of April, 2023.

/s/

_____

*Nathan I. Silver, II*